# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JUAN NATAL PÉREZ, et al.,**

**Plaintiff,**

**v.**

**ORIENTAL BANK & TRUST, et al.,**          **CASE NO. 16-1543 (GAG)**

**Defendants.**

## OPINION AND ORDER

Plaintiff Juan Natal Pérez, his spouse, and their conjugal partnership sued Defendant Oriental Bank & Trust for discrimination, failure to provide reasonable accommodation, and retaliation under the American with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* Natal also invokes the Court's supplemental jurisdiction to bring claims under Puerto Rico Law 44 of July 2, 1985, P.R. LAWS ANN. tit. 1, §§ 501 *et seq.*, Law 100 of June 30, 1959, P.R. LAWS ANN. tit. 29, §§ 146 *et seq.*, Law 115 of December 20, 1991, P.R. LAWS ANN. tit. 29, § 194a, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141-42. Pending before the Court is Oriental's motion for summary judgment. (Docket No. 49). After disposing of preliminary matters involving Local Rule 56 and Oriental's Motion to Strike at Docket No. 66, the Court **GRANTS in part** and **DENIES in part** Oriental's motion for summary judgment. All of Natal's claims, except the ADA and ADEA retaliation claims and their local law counterparts, are **DISMISSED** with prejudice.

### I.      Local Rule 56

The issue is whether Natal properly denied and qualified Oriental's statement of uncontested material facts when he included additional facts in his denials and qualifications. Although Oriental did not raise the issue, the Court addresses it *sua sponte*.

At the summary judgment stage, parties must follow Local Rule 56. Section (c) instructs that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." L. Cv. R. 56(c). This opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Each denial and qualification must be supported by a record citation. Id.

In addition to allowing an opposing party to admit, deny, or qualify the moving party's facts, Local Rule 56(c) allows an opposing party to submit additional facts "*in a separate section*." Id. (emphasis added). As the First Circuit has stated, "[t]he plain language of the rule specifically requires that additional facts be put forward in a 'separate section.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) (holding that district court acted within its discretion when it disregarded additional facts not contained in a separate section). A separate section serves two purposes: "to allow the moving party to reply to those additional facts and to allow the court to easily determine the disputed facts." Malave-Torres v. Cusido, 919 F. Supp. 2d 198, 207 (D.P.R. 2013). For these reasons, "a party may not include numerous additional facts within its opposition to the moving party's statements of uncontested facts." Id.

If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted. Thus, the First Circuit has consistently held that litigants ignore

Local Rule 56 at their peril. See <u>Caban Hernandez v. Philip Morris USA, Inc.</u>, 486 F. 3d 1, 7 (1st Cir. 2007).

The line between a properly supported qualification or denial and additional facts can be blurry. Because Local Rule 56 requires that a record citation support each qualification or denial, it can seem inevitable to proffer additional facts when doing so. But a better understanding of what constitutes a qualification or denial helps. A qualification is "[a] modification or limitation of terms or language; esp., a restriction of terms that would otherwise be interpreted broadly." *Qualification*, Black's Law Dictionary 1436 (10th ed 2014). Simply put, a qualification must clarify a statement of fact that, without clarification, could lead the Court to an incorrect inference. Thus, if a fact states that "Plaintiff works as an attorney all day," a proper qualification would be: "Plaintiff works as an attorney from 9-5" and a citation to the record supporting this fact. This would prevent the Court from inferring that Plaintiff works as an attorney from 7 a.m. to 9 p.m., which can be the standard in the legal world. Adding that Plaintiff works from 9-5 would not be considered an "additional fact" in the context of Local Rule 56. On the other hand, a denial, as common sense suggests, is "[a] statement that something is not true." *Denial*, <u>id.</u> at 527. So if a fact states that "Plaintiff is an attorney," a proper denial would be: "Denied. Plaintiff is a doctor" and a citation to the record supporting this fact.

First Circuit case law sheds some light on when parties cross the line between a proper qualification or denial and additional facts. In <u>Acevedo-Padilla v. Novartis Ex Lax, Inc.</u>, the district court held that "a party's denial or qualification of a proposed fact *must be strictly limited to the issue therein raised.* Any additional information shall be included in a separate section in order to ease the Court's task." 740 F. Supp. 2d 293, 298 (D.P.R. 2010), <u>rev'd and remanded on other</u>

grounds, 696 F.3d 128 (1st Cir. 2012) (emphasis added).[1] The First Circuit affirmed this ruling, labeling it "an appropriate exercise of [the district court's] discretion." Acevedo-Parrilla, 696 F.3d at 137 ("[D]istrict court, in an appropriate exercise of its discretion, ruled that it would disregard any additional facts provided by [plaintiff] when denying or qualifying [defendant's] statement of uncontested facts"). So, returning to the previous example of the 9-5 attorney, it could be improper to qualify the fact that Plaintiff works "all day" by adding that one day at work, Plaintiff's boss made a discriminatory remark. This fact would not be "strictly limited to the issue therein raised." Acevedo-Padilla, 740 F. Supp. 2d at 298.

The Court notes that the "strictly limited to the issue therein raised" standard for denials and qualifications, as articulated by my esteemed colleague, the late Senior Judge Salvador E. Casellas, is demanding but necessary. Id. The Court wants to impart justice, and lawyers play an essential role in helping it achieve this goal. Honest argumentation and clear presentation of the issues and facts help the Court tremendously. The opposite burdens the Court just as much.

Here, Natal's response to Oriental's statement of uncontested material facts suffers from the same flaw as the plaintiff's in Acevedo-Parrilla: many of Natal's denials and qualifications contain additional facts. For convenience and readability, the Court will address the issues in footnotes as they arise in the relevant facts section. But to illustrate the problem, here is a notable example. Paragraph 21 of Oriental's statement of uncontested material facts states: "On September 30, 2015 Mr. Natal was suspended from work and pay from September 30, 2015, through October 30, 2015 for incorrectly directing his tellers' employees and for telling them that they could accept tips from clients up to $150." (Docket No. 49 ¶ 21) (Record citations omitted). A proper qualification would

---

[1] The district court's opinion, as published, mistakenly names the plaintiff "Acevedo-Padilla" instead of "Acevedo-Parrilla." The First Circuit corrected the mistake. The Court will refer to the cases as they appear published.

be strictly limited to the suspension's date, length, or reason. But instead, Natal narrates everything

that transpired before, during, and after the suspension, as the following *fragment* of Natal's

paragraph 21 shows:

> Paragraph 21 of DSUF is qualified, since on September 30, 2015, Natal was summoned to a meeting with Beatriz Santiago ("Santiago") and Mrs. Tania Sánchez ("Sánchez"), who was one of the managers of defendant's human resources department. During the meeting, Sánchez and Santiago referred to Natal as old man and accused him of having informed the employees of the branch that they could accept tips up until the amount $150.00, which Natal denied. Natal informed both of them that he had never issued that instruction to any of the employees that he supervised. During the meeting, Santiago and Sánchez referred to Natal as "old man" and also told him to 'be quiet and to shut up his mouth', and also told him to 'be quiet old man'. Sánchez also told Natal that he was an old man, that he was worthless and that he should not be working at the bank. Sánchez and Santiago also told Natal that he was not good as a bank manager. Natal stated that the whole meeting was to insult him. Santiago then physically pushed Natal out of the room and told him to wait outside while Santiago and Sánchez continued with the meeting. Sánchez and Santiago also told Natal that he was going to be fired and ordered Natal to leave the facilities. Santiago and Sánchez then told Natal that he was going to be suspended from employment but failed to inform Natal about the amount of days of the suspension from employment and whether Natal was going to be suspended without pay or not.

> On September 30, 2015, Natal sent an email requesting to Santiago and Sánchez the reason for his suspension and the time of his suspension, but neither Santiago nor Sánchez, nor any defendant officer sent to Natal a response.

> On October 9, 2015, Natal filed a charge of discrimination before the EEOC and on October 14, 2015, sent a copy of the same to the defendant.

> . . . .

(Docket No. 61-1 ¶ 21) (Record citations omitted).

Natal's non-compliance troubles the Court because some of these improperly provided facts

are crucial to his case. They tell the story of when, where, and how he suffered alleged

discrimination. The Court could ignore them because it does not have to ferret through the parties'

exhibits under Local Rule 56. See L. Cv. R. 56(e) ("The court shall have no independent duty to

search or consider any part of the record not specifically referenced in the parties' separate

statement of facts."). But the Court firmly believes in access to justice, the lack of which is a serious problem in Puerto Rico, and feels uncomfortable completely disregarding these additional facts. See, e.g., LUIS F. ESTRELLA MARTÍNEZ, ACCESO A LA JUSTICIA 5 (2017) ("Dworkin visualizes 'integrity' as an ideal that aspires that public powers are not exercised in a capricious or arbitrary way, but coherently.") (translation ours); Deborah L. Rhode & Pablo J. Hernández Rivera, *Access to Justice in Puerto Rico*, 86 REV. JUR. UPR 818, 822 (2017) ("The challenges facing Puerto Rico in ensuring access to justice remain substantial."); Federico Hernández Denton, *Acceso a la justicia y Estado de Derecho*, 81 REV. JUR. UPR 1129 (2012) (focusing on two issues that "directly affect the manner in which one can measure our Rule of Law's success . . . . access to justice and court efficiency") (translation ours); JOSÉ TRÍAS MONGE, SOCIEDAD, DERECHO Y JUSTICIA 291 (1986) ("[L]awyer[s] must ensure the continued improvement in the progress of our courts") (translation ours). Balancing its interests in efficiency and access to justice, the Court will make an exception: It will consider that part of Natal's deposition testimony where he narrates the alleged discriminatory incident when deciding if the facts he states, if believed by a jury, would create a genuine issue of material fact.[2]

## II.     Relevant Factual Background

Natal was born in 1957, and at the time of the complaint, was 58 years old. (Docket Nos. 49 ¶ 1; 61-1 ¶ 1). He has worked in different banks since 1979, and for Oriental since 2012. (Docket Nos. 49 ¶¶ 2-8; 61-1 ¶¶ 2-8).

When he became Oriental's employee, Natal worked as a Branch Operations Manager in the Old San Juan branch. (Docket Nos. 49 ¶ 7; 61-1 ¶ 7). His functions included managing branch

---

[2] Plaintiff's counsel is once again admonished to comply with Local Rule 56 in the future. Failure to do so may be considered malpractice, especially considering his "long track record" of inappropriate litigation tactics. Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380, 391 (1st Cir. 2016).

operations, administering personnel, ensuring compliance with Oriental's policies, bank regulations, and procedures, among others. <u>Id.</u> One of these policies was Oriental's Code of Business Ethics, which forbade soliciting and accepting anything of value in exchange for any business service. (Docket Nos. 49 ¶ 11; 61-1 ¶ 11). Oriental gave Natal the Code and required him to review it annually. (Docket Nos. 49 ¶¶ 9-11; 61-1 ¶¶ 9-11).

In November 2013, Oriental transferred Natal from the Old San Juan branch to the Cataño branch, where he worked as Branch Service and Operations Manager. (Docket Nos. 49 ¶ 14; 61-1 ¶ 14). He was in charge of supervising cashiers and platform relationship officers. (Docket Nos. 49 ¶ 17; 61-1 ¶ 17).

*Work Suspension and Alleged Discrimination*

During his tenure in Cataño, in March 2015, an employee named Diosys Ortiz was placed under Natal's supervision. (Docket Nos. 49 ¶ 78; 61-1 ¶ 78). On the one hand, Oriental asserts that Natal "never had to give Ms. Ortiz a warning or call her attention regarding her performance or violation of Oriental's rules and policies." (Docket No. 49 ¶ 78). On the other hand, Natal qualifies that he was instructed to keep an eye on her to provide a reason to terminate her, because she was sick with cancer. (Docket No. 61-1 ¶ 78). Regardless of this dispute, the parties agree that the following September, Oriental terminated Ortiz for accepting cash tips from a client. (Docket Nos. 49 ¶ 78; 61-1 ¶ 78).

Consequently, on September 30, Oriental suspended Natal for incorrectly telling his employees that they could accept tips up to $150. (Docket No. 49 ¶ 21). Nevertheless, Natal qualifies this fact by clarifying that he denied the accusation. (Docket No. 61-1 ¶ 21).[3] According

---

[3] Natal's qualification contains four paragraphs listing numerous additional facts surrounding the meeting where he was suspended and the aftermath. These additional facts belong in a separate section per Local Rule 56(c). Nevertheless, the Court will consider Natal's testimony of that event and cite directly to the record evidence in the ensuing sentences.

to Natal's deposition testimony, after the cash tip incident, he was summoned to a meeting with Santiago, his supervisor, and Tania Sánchez, a human resources manager. (Docket No. 49-1 at 55-60, 159-60). According to Natal, during the meeting they referred to him as old, told him to be quiet, and called him worthless. Id. Natal was suspended for one month. (Docket Nos. 49 ¶ 21; 61-1 ¶ 21). He does not know if Oriental has ever reprimanded other managers for the same conduct he allegedly engaged in. (Docket Nos. 49 ¶ 27; 61-1 ¶ 27).

During his suspension, Natal filed a discrimination charge against Oriental in the Equal Employment Opportunity Commission alleging age discrimination and retaliation. (Docket Nos. 49 ¶ 22; 61-1 ¶ 22). According to Natal, he never complained to Human Resources about the discriminatory acts because the discriminatory comments were made by a human resources manager. (Docket No. 61-1 ¶ 28).

*Reasonable Accommodation*

Natal did not return to work when his suspension ended on November 1 because he took a leave under the Family Medical Leave Act (FMLA) until November 30.[4] Natal also requested reasonable accommodation to attend his medical appointments four to five times per month. (Docket Nos. 49 ¶ 75; 61-1 ¶ 75). He did not request any other types of reasonable accommodation. (Docket Nos. 49 ¶ 77; 61-1 ¶ 77). Although Oriental has never rejected Natal's requests for sick leave, Natal claims that Santiago, his supervisor, made disrespectful comments about his age when he made his request, such as "it's time for you to go home, just pick up your bags," and also questioned his requests. (Docket Nos. 49 ¶ 76; 61-1 ¶ 76).

---

[4] Natal qualifies this statement by introducing new facts: (1) that after the meeting he was mentally distressed, (2) visited a psychiatrist on September 30, (3) was diagnosed an anxiety disorder and depression, and (4) was ordered to rest from November 1 to November 30. These facts belong in a separate section. They do not clarify the fact Oriental offered: that he did not return to work on November 1 because he took leave.

*Return to Work and Transfer to Old San Juan*

Natal returned to work on December 3. (Docket Nos. 49 ¶ 23; 61-1 ¶ 23). A month and a half later, Oriental transferred Natal back to the Old San Juan branch. (Docket Nos. 49 ¶ 24; 61-1 ¶ 24).[5]

*2015 Work Evaluation*

Natal's performance during 2015 was evaluated by his supervisor, Santiago. (Docket Nos. 49 ¶ 29; 61-1 ¶ 29).[6] The evaluation occurred in October, while he was suspended.[7] (Docket No. 49 ¶ 47). His performance in the "Goals-Coaching Sessions" section was rated as "unsatisfactory/does not meet expectations" because he failed to complete the second part of a training. (Docket Nos. 49 ¶ 30; 61-1 ¶ 30). But Natal claims he was unable to complete this training because it occurred during his suspension and leave. Id. According to Natal, he tried to complete the second part in December but Santiago did not let him. (Docket No. 61-1 ¶ 30). In all other areas of the "Goals" section, however, Natal received a positive evaluation. (Docket Nos. 49 ¶¶ 31-39; 61-1 ¶¶ 31-39). But again in the "Competency" section, Natal received negative evaluations which he disagreed with, testifying in his deposition that they were because of his age. (Docket Nos. 49 ¶¶ 40-46; 61-1 ¶¶ 40-46).

*COBRA Letter and Written warning*

On March 12, Natal received an informative letter about his rights and responsibilities under COBRA, which allows employees to keep their healthcare coverage in case of termination or other

---

[5] Additional facts about his replacement, his opinion regarding the branch, and his opinion regarding the transfer are disregarded because they do not qualify the fact that he was transferred to Old San Juan in January 2016.

[6] Natal improperly qualifies this fact by narrating prior evaluations. These are separate facts that belong in a separate section.

[7] Natal qualifies this fact and adds new allegations that belong in the complaint, not the motion for summary judgment. Moreover, as separate facts that belong in a separate section, the qualification is also improper. Thus, the Court will treat Oriental's fact as undisputed.

qualifying events. (Docket Nos. 49, ¶ 52; 61-1 ¶ 52). After asking Human Resources about the letter, a supervisor told Natal that it was an informative communication for his records, and as of this complaint's filing, none of the qualifying events had happened. (Docket Nos. 49, ¶¶ 53-54; 61-1 ¶¶ 54).

Four days later, Natal received a written warning for failing to monitor the cash funds and exceeding the cash limits at the Cataño branch in December 2015, and in the Old San Juan branch in January 2016. (Docket Nos. 49 ¶ 56; 61-1 ¶ 56). Natal does not dispute the fact that he received the warning, but sustains the warning was unjust and retaliatory. (Docket Nos. 49 ¶ 58; 61-1 ¶ 58). Still, Natal is unaware if Oriental disciplined other managers who engaged in the same conduct as him. (Docket Nos. 49 ¶ 57; 61-1 ¶ 57).[8]

Almost two weeks later, Natal filed this lawsuit alleging age and disability discrimination. As the case transpired, Oriental filed a motion for summary judgment, Natal responded, and Oriental replied and filed a motion to strike some of Natal's submissions.

### III.    Defendant's Motion to Strike

Oriental filed a motion to strike four exhibits submitted by Natal in his opposition to Oriental's motion for summary judgment and statement of uncontested material facts. See Docket Nos. 66; 61; 61-1. The four exhibits are (1) a memo dated April 13, 2016 (Docket No. 61-11), (2) a medical record (Docket No. 61-12), (3) an anti-discrimination charge filed on June 23, 2017 (Docket No. 61-14), and (4) a memo dated April 15, 2016 (Docket No. 61-15).

---

[8] Natal qualifies this fact stating that "Santiago never took any disciplinary actions against the manager that replaced Natal, while the plaintiff was suspended from salary and employment and on a medical leave from October through early December 2015, in the Cataño branch, nor issued any disciplinary actions against the manager and the Senior Teller at the Old San Juan branch that requested to Santiago to have excess cash funds in the Old San Juan branch in the month of January 2016, due to "las Fiestas de la Calle San Sebastián," which Santiago approved." The citation provided does not support this assertion and does not deny or qualify Oriental's proffered fact, which is clearly supported by the record. Oriental asked Natal if he knew of other managers who were disciplined for the same conduct and he replied "I don't know." (Docket No. 49-1 at 150).

A. <u>The Memos and Anti-Discrimination Charge</u>

Oriental contends that the Court should strike the two memos and the anti-discrimination charge because Natal (1) did not produce them in discovery and (2) they relate to matters beyond the complaint's scope. (Docket No. 66 at 3). According to Oriental, "these documents related to events that occurred *after the filing of the Complaint* but related to another, separate, employment action involving the plaintiff." <u>Id.</u> (emphasis added).

"Rule 15(d) of the Federal Rules of Civil Procedure provides that any 'transaction, occurrence, or event that happened after the date of the pleading' should be set forth in a supplemental pleading." W<span style="font-variant:small-caps">right and</span> M<span style="font-variant:small-caps">iller</span>, 6 F<span style="font-variant:small-caps">ed</span>. P<span style="font-variant:small-caps">rac</span>. & P<span style="font-variant:small-caps">roc</span>. C<span style="font-variant:small-caps">iv</span>. § 1473 (3d ed.). To file a supplemental pleading, "[l]eave must be sought by motion, upon reasonable notice to the other parties, and the court may impose such terms as are just." <u>Id.</u> § 1504.

This case was filed on March 29, 2016. The memos date from April 2016, and the charge from June 2017. These documents raise new allegations of discrimination. Natal argues that he did not submit these exhibits to raise new allegations, but to clarify an incorrect statement by Oriental that Natal had not been terminated. But as Oriental points out in its motion, at the time of the complaint, Natal had not been terminated or subject to additional disciplinary measures. (Docket No. 48, fn. 3). Therefore, there was nothing to correct. Moreover, this is not a case where the plaintiff "is merely augmenting the evidentiary basis for the very same age discrimination claim that he had already sufficiently pled." <u>Soto-Feliciano</u>, 779 F.3d 26. That would be the case if Natal introduced new evidence supporting his existing claims, like a deposition from another employee concerning his transfer to Old San Juan. Instead, Natal is "introducing a new theory of liability"—that he was terminated and thus, discriminated and retaliated against. <u>Id.</u> If Natal wanted to include these new allegations, the appropriate course was to amend his complaint and include these new events in a

supplemental pleading. The reason for this is straightforward: fairness demands notice, and Oriental needed notice of the allegations to defend itself against Natal. Raising new allegations of discrimination at the summary judgment stage betrays this principle.

B. Medical Records

The medical records are cited in support of Natal's disability claim. Pages 16-21 include evaluations after the complaint was filed. Admitting these records would not alter the Court's decision, so the Court will not entertain the issue of their admissibility.

## IV. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

1  56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which

2  could affect the outcome of the case, then the Court must deny summary judgment. See Anderson

3  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4      When considering a motion for summary judgment, the Court must view the evidence in

5  the light most favorable to the nonmoving party and give that party the benefit of any and all

6  reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not

7  make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

8  however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable

9  inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440

10  F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

11  **V.  Discussion**

12      These issues are: (1) Whether Natal satisfies the requirements for a *prima facie* case of

13  discrimination under ADEA; (2) whether Natal suffered from a hostile work environment because

14  of his age while working at Oriental; (3) whether Oriental engaged in willful discrimination; and

15  (4) whether Oriental retaliated against Natal for engaging in protected activity and opposing

16  unlawful activity. A fifth issue—ADA discrimination and reasonable accommodation—will not

17  be considered because Natal has withdrawn these claims.

18    A. ADEA Discrimination

19      The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any

20  individual or otherwise discriminate against any individual . . . because of such individual's age."

21  29 U.S.C. § 623(a)(1). "A plaintiff asserting a claim under the ADEA has the burden of

22  establishing 'that age was the "but-for" cause of the employer's adverse action.'" Acevedo-

23  Parrilla, 696 F.3d at 138 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)).

24

ADEA cases can be divided into two kinds: those with direct evidence of discrimination and those without. "Answering [if direct evidence exists] is more difficult than might appear at first blush," but it is "universally accepted" that stray remarks, such as "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" are not direct evidence. <u>Fernandes v. Costa Bros. Masonry</u>, 199 F.3d 572, 581 (1st Cir. 1999), <u>abrogated on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (quoting <u>Price Waterhouse</u>, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)). Absent direct evidence of discrimination, the Court addresses an ADEA age discrimination claim under "the familiar three-step framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 (1973)." <u>See</u> <u>Soto-Feliciano</u>, 779 F.3d at 23.

Here, the parties submitted their arguments following the <u>McDonnell Douglas</u> approach for indirect evidence. Confusingly, in his argument asserting a *prima facie* case, Natal claims there is direct evidence of discrimination, but does not flesh out his argument as to why the Court should approach his claims under the direct evidence approach and not <u>McDonnell Douglas</u>. (Docket No. 61 at 6). First, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). And second, even if the alleged remarks made during the suspension meeting or requests for reasonable accommodation were advanced as direct evidence, for the reasons discussed in the hostile work environment section below, the Court finds that these are "stray remarks." So, for these two reasons and out of fairness to both parties, who argued their case under the <u>McDonnell Douglas</u> approach, the Court will proceed under this approach.

In the first of the three <u>McDonnell Douglas</u> stages, the plaintiff must establish a *prima facie* discrimination case. <u>Acevedo-Parrilla</u>, 696 F.3d at 136. This requires a plaintiff to show: "that (i) [he] was at least 40; (ii) [his] work was sufficient to meet the employer's legitimate expectations; (iii) [his] employer took adverse action against [him]; and (iv) either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action." <u>Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc.</u>, 804 F.3d 127, 129–30 (1st Cir. 2015). Oriental concedes the first prong of the test and disputes the rest.

*1. Adverse Employment Action*

Natal and Oriental raise the issue of what constitutes an adverse action under the ADEA. Natal alleges five adverse actions: the suspension, the transfer to Old San Juan, the negative work evaluation in 2015, the written warning in 2016, and the COBRA letter in 2016. The Court will consider all, including the suspension that Oriental conceded, to clarify the confusion of whether the ADEA requires actual or constructive discharge for an adverse employment action to exist. As explained below, based on precedent of the Supreme Court and First Circuit, the Court holds that an adverse employment action under the ADEA does not require actual or constructive discharge. Additionally, the Court holds that Title VII discrimination precedent for what constitutes adverse action applies to ADEA discrimination cases as well.

The confusion as to whether ADEA requires discharge or if another type of adverse employment action suffices is not unwarranted. The type of adverse action encompassed by the ADEA includes failure or refusal to hire, discharge, or discrimination "with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). The First Circuit has listed the elements of a *prima facie* case and used adverse action and discharge interchangeably when defining the third prong. <u>See, e.g.</u>, <u>Acevedo-Parrilla</u>, 696 F. 3d at 138 ( "[3]

was nevertheless fired"); Adamson, 750 F.3d at 78 ("(3) that he suffered an adverse employment action such as a firing"). This Court noted in Colon v. Medtronic, Inc., "that the First Circuit has yet to specifically address whether a Plaintiff who claims *no type* of discharge can still satisfy the adverse employment action prong of an ADEA claim." No. 13-1569, 2015 WL 5089494, at *12 (D.P.R. Aug. 27, 2015) (emphasis added). It further noted that "[t]he undersigned's esteemed colleagues have frequently decided that the third prong of an ADEA claim requires that the employee be discharged—either actually or constructively." Id. Indeed, since 2015 the First Circuit has not ruled on an ADEA case where the adverse actions excluded a discharge.[9] Despite the ambiguity, the Court denied summary judgment in Colon, where the plaintiff was not discharged and did not claim a constructive discharge; instead, she claimed that a negative work evaluation was an adverse action. The evaluation prevented the plaintiff from obtaining a performance bonus. Thus, drawing on case law from other district courts, the Court held that "the issue [of] whether the consequences of said negative evaluation rises to a level of an adverse employment action" was best left for the jury. Id. at *13.

Supreme Court precedent settles the issue of whether adverse action requires discharge. In Gross v. FBL Financial Services, Inc. the majority opinion referred to the ADEA as "mak[ing] it unlawful for an employer to take *adverse action* against an employee 'because of such individual's age.'" 557 U.S. 167, 170 (2009) (citing 29 U.S.C. § 623(a)) (emphasis added). The adverse action in Gross was a reassignment, which the plaintiff considered a demotion. Id. at 170. While this would appear to dissipate any confusion as to whether an adverse action requires actual or constructive discharge, the issue before the Court was not what constituted an adverse action. But

---

[9] In Soto-Feliciano, the First Circuit treated a suspension as an adverse action, but considered it alongside a subsequent termination. 779 F.3d at 27. ("Soto was suspended less than two weeks later, making the allegedly discriminatory remarks temporally proximate to, rather than remote from, the adverse employment action.").

fortunately, statutory interpretation comparing the ADEA with Title VII provides further assurance that adverse action does not require actual or constructive discharge.

"When conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" Id. at 174. In 2013, the Supreme Court held that Title VII's retaliation provision requires the same burden of proof as the ADEA's retaliation provision because each statute employed the same "because of" language in its text. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013). Thus, "[g]iven the lack of any meaningful textual difference between the text in [Title VII] and the [ADEA], the proper conclusion here . . . is that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Id. at 2528.

Here, the Court opts to analyze what constitutes "adverse action" in the context of ADEA discrimination using Title VII precedent as well. It does so "[g]iven the lack of any meaningful textual difference" between the two statutes on the forbidden conduct.[10] Indeed, "[t]he basic substantive provisions of the [ADEA] are identical to Title VII, with the substitution of the word 'age' as the prohibited basis for discrimination in place of 'race, color, religion, sex, or national origin.'" Rothstein, et al, 1 Employment Law § 2:38 (5th ed.). Since Title VII accepts less than constructive or actual discharge for an adverse action to exist, the same must be true of the ADEA given the lack of a meaningful textual difference between both. Moreover, because of this

---

[10] Title VII states: "It shall be unlawful . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Almost identically, the ADEA states: "It shall be unlawful . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1).

similarity, Title VII discrimination precedent for "adverse action" can apply to ADEA discrimination "adverse action" issues as well.[11]

The First Circuit has explained that "[t]o determine if an employment action is in fact 'adverse,' we look for whether it has '*materially* change[d] the conditions of plaintiff['s] employ.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 25 (1st Cir. 2017) (quoting Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002). "Material changes include 'demotions, *disadvantageous transfers or assignments*, refusals to promote, *unwarranted negative job evaluations*, and toleration of harassment by other employees.'" Gu, 312 F.3d at 14 (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)) (emphasis added). Still, "[t]he clear trend of authority is to hold that a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (quoting Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)) (emphasis in original).

Natal's transfer to Old San Juan was not an adverse employment action. It is undisputed that Natal's salary and benefits did not change from September 30, 2015 until his last day at Oriental.[12] (Docket No. 49 ¶¶ 24-26). Natal did not supply any admissible additional facts in his submissions that would allow the Court to conclude that the transfer was disadvantageous. Even assuming that the facts raised in his response brief are true—that it was a demotion just because the Old San Juan branch was less active—these would not prove that the transfer was materially

---

[11] One might argue that the Court cannot interpret the ADEA using Title VII discrimination precedent based on the Supreme Court's decision in Gross, where the Court refused to do so for the issue of causation. But on the issue of causation, the ADEA and Title VII use different language. Yet the issue here is the definition of "adverse action", where both statutes do not differ.

[12] Natal denies this undisputed fact saying that his salary changed because he was suspended for one month and took medical leave for another month, but (1) this happened before his transfer and (2) this does not deny the fact that he had the same salary and benefits. If anything, it qualifies the fact saying that despite having the same salary, he did not get paid during his suspension and medical leave.

1  adverse. "A materially adverse change in the terms and conditions of employment 'must be more

2  disruptive than a mere inconvenience or an alteration of job responsibilities.'" De Jesus v. Potter,

3  211 F. App'x 5, 9 (1st Cir. 2006) (quoting Marrero, 304 F.3d 7, 23 (1st Cir. 2002)) (No adverse

4  action where employee "argue[d] that the transfer was 'disadvantageous' because she was required

5  to do more work, subjected to 'extreme supervision,' and forced to undergo a period of

6  probation.").

7      The 2016 written warning cannot be considered an adverse action either given the absence

8  of evidence pointing to the contrary. Oriental's statement of uncontested material facts states that:

9  "Natal received a written warning for failure to monitor the cash funds in the branch and exceeding

10  the cash limits at the Cataño branch for the month of December 2015 and in the Old San Juan

11  branch for the month of January, 2016." (Docket No. 49 ¶ 56). Natal improperly denied this fact,

12  and the Court has admitted Oriental's fact as uncontroverted. There are no other facts indicating a

13  material change in the conditions of Natal's employment as a result of this warning. A warning in

14  and of itself is not an adverse employment action. Even if treated as a negative job evaluation, case

15  law is clear that there must be proof that the negative evaluation is "unwarranted." Given that Natal

16  has not provided *admissible* facts indicating so, and the Court is not required to ferret through

17  exhibits to find them, it holds that Natal has not met his burden of proof.

18      Likewise, Natal has not proven an issue of fact regarding the COBRA letter being an

19  adverse action. The undisputed facts show that Natal received an informative letter about his rights

20  and responsibilities under COBRA. (Docket Nos. 49, ¶ 52; 61-1 ¶ 52). After asking Human

21  Resources about the letter, a supervisor told Natal that it was an informative communication for

22  his records. (Docket Nos. 49, ¶ 53; 61-1 ¶ 53). As of filing this complaint, none of the letter's

23

24

qualifying events that would activate his rights have happened. (Docket Nos. 49, ¶ 54; 61-1 ¶ 54). Thus, the letter did not materially change anything in his employment.

On the other hand, the suspension and negative job evaluation from 2015 could be considered an adverse employment action. It is undisputed that Natal got a negative job evaluation for not completing a training. (Docket Nos. 49 ¶ 30; 61-1 ¶ 30). Whether the job evaluation was warranted or not is disputed, as Natal properly qualified that he was unable to complete the training because he was suspended and on leave while it happened. (Docket Nos. 49 ¶ 30; 61-1 ¶ 30). Since an unwarranted job evaluation could be a "material change," see Gu, 312 F.3d at 14, it could also be an adverse action in the eyes of a reasonable juror. Thus, on this issue, Natal has met his burden. The same is true of the suspension, which Oriental has conceded.

In sum, the Court concludes that Natal has met his burden on the adverse action prong of the *prima facie* test for the suspension and the 2015 negative evaluation.

### 2. *Plaintiff's Qualification*

To meet his burden under the qualified prong of the *prima facie* test, a plaintiff must "present[] 'evidence which, if believed, prove[s] that he was doing his chores proficiently.'" Acevedo-Parrilla, 696 F.3d at 139 (internal citations omitted) (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988)). But "[a] plaintiff is not required, at the *prima facie* stage, to disprove the defendant's proffered nondiscriminatory reason for taking an adverse employment action." Id. As the First Circuit has held, "doing so 'bypass[es] the burden-shifting analysis and deprive[s] the plaintiff of the opportunity to show [such] reason was in actuality a pretext designed to mask discrimination.'" Id. (quoting Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 444 (1st Cir. 2009)). Thus, the First Circuit has found that a plaintiff has met his *prima facie* burden "where, despite employer's challenge of his account regarding the 'adequacy of his

job performance,' plaintiff 'adduced a quantum and quantity of evidence of his competence . . . sufficient to prevail if a jury believed his version of the facts and disbelieved defendant.'" <u>Id.</u> (citing <u>Herbet v. Mohawk Rubber Co.</u>, 872 F.2d 1104, 1112 (1st Cir. 1989)).

The Court holds that a dispute of material fact exists whether Natal is qualified for the position he held. Oriental argues that Natal is not qualified because he instructed employees that they could take tips and he failed to complete part of his training. These were also the reasons for the adverse actions taken by Oriental: the suspension and the negative evaluation. But Natal does not need to disprove these reasons at this stage, and evidence exists that would allow a reasonable juror to infer he was qualified. First, he has worked in banking for decades, and Oriental proffered no proof of prior negative performance. (Docket Nos. 49 ¶ 2; 61-1 ¶ 2); <u>see</u> <u>Velez</u>, 585 F.3d at 448 (Plaintiff pointed specifically to his long record of employment . . . a twenty-four year period without discipline or indications of deficient performance . . . ."). Second, Oriental gave Natal a positive evaluation in some areas of its 2015 evaluation. (Docket Nos. 49 ¶¶ 31-39; 61-1 ¶¶ 31-39). Thus, despite his flaws in one area, a juror could conclude that his strengths in other areas tip the scale in his favor. Third, Oriental cannot point to his suspension as proof that he was not qualified because he allowed employees to take cash tips. (Docket No. 49 ¶ 21). Natal denies having instructed so, thus creating a dispute of fact regarding this alleged instruction. (Docket No. 61-1 ¶ 21). And as explained earlier, Natal does not need to disprove the reason for the adverse action—the suspension—at this stage. Therefore, the Court holds that Natal meets his burden for this part of the *prima facie* test.

### 3. *Treating Age Neutrally*

The Court agrees with Oriental that Natal failed to provide evidence showing that Oriental did not treat age neutrally when it suspended Natal and issued a negative job evaluation. As plaintiff, he bears the burden of proof that Oriental did not treat age neutrally.

Regarding the suspension, Natal fails to satisfy the burden of proof due to insufficient evidence. Natal does not know if Oriental has reprimanded other managers for the same conduct he allegedly engaged in —authorizing cash tips. This undisputed fact is highly indicative that Natal cannot prove that Oriental did not treat age neutrally when suspending him. (Docket Nos. 49 ¶ 27; 61-1 ¶ 27). Still, an issue remains as to whether the age-based comments during the suspension meeting can prove that Oriental did not treat age neutrally. It is true that "evidence of age-related comments could support an inference of pretext and discriminatory animus," especially when "some of these comments [are] made by the key decisionmaker and others . . . during the decisionmaking process." Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433, n. 6 (1st Cir. 2000). Nevertheless this inference does not follow where the plaintiff "fail[s] to adduce sufficient evidence that the remarks were both temporally *and* causally related to [the defendant's] decision to discharge him." Dunn v. Trustees of Boston Univ., 761 F.3d 63, 75 (1st Cir. 2014) (quoting Melendez v. Autogermana, Inc., 622 F.3d 46, 54 (1st Cir. 2010)) (emphasis in original). While Natal says they called him "old man," he also says that "[w]hat was discussed [in the meeting] was the topic of the tips." (Docket No. 49-1 at 55, 57). This may prove that key decisionmakers made age-related comments during the decision-making process, but he still fails to "adduce sufficient evidence that the remarks were *both* temporally and causally related" to their decision to suspend him. Dunn, 761 F.3d at 75. He has not offered sufficient proof to convince a jury that he was suspended *because* he was "old," or even that it weighed in the decisionmaking process. A jury is

left to conclude that Oriental did not treat age neutrally because (1) two employees called him old (2) during a meeting where they suspended him. That these two facts co-exist does not prove a causal relation in ADEA discrimination.

As to the negative evaluation, Natal's only proof that Oriental did not take age neutrally is his testimony attributing it to becoming "old" in the eyes of his supervisor after the suspension. (Docket No. 49-1 at 98 ("From September on, I became an 'old' person.")). The problem is that Natal offers no facts that would support an inference that his conclusion is correct. As the First Circuit has held, "a nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Garmon v. Nat'l R.R. Passenger Corp.</u>, 844 F.3d 307, 313, 315 (1st Cir. 2016) ("[O]nly evidence proffered . . . contains unsupported, speculative assertions about the way overtime was determined and administered . . . . [is] insufficient to present a material issue of fact meriting trial."). Moreover, "testimony and affidavits that 'merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge' are insufficient." <u>Velazquez-Garcia v. Horizon Lines Of Puerto Rico, Inc.</u>, 473 F.3d 11, 18 (1st Cir. 2007) (quoting <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 53 (1st Cir. 2000) (affidavit was sufficient because it included "specific factual information based upon her personal knowledge".)). Therefore, given the lack of evidence allowing a jury to conclude that Oriental did not treat age neutrally, the Court holds that Natal cannot establish a *prima facie* case of ADEA discrimination.

*4. Burden-Shifting: Legitimate Business Reasons and Pretext*

Even if the Court concluded that Natal met his burden of proof to show that Oriental did not treat age neutrally, Oriental can prove it had legitimate business reasons to suspend Natal— Oriental believed that Natal authorized employees to take tips against Oriental's ethical code and

policies. This legitimate business reason would shift the burden back to Natal to prove that this reason to suspend him was pretextual.

If Natal tried to prove that this reason was pretextual, he would fail again because of insufficient evidence. All he could point to would be temporally proximate stray remarks without any proof of a causal connection, and his denial that he authorized to take tips. But the undisputed facts are that Ortiz took an unauthorized cash tip, Natal was her supervisor, and Oriental reprimanded him for letting it happen. Being called old for the first time during the suspension meeting is not enough to convince a reasonable jury that he was really suspended because of his age and not because of the tip incident, especially when the undisputed facts prove that Oriental had compelling reasons to punish him. See Docket 49-1 at 98 ("*From September on*, I became an 'old' person.") (emphasis added); Melendez v. Autogermana, Inc., 622 F.3d 46, 55 (1st Cir. 2010) ("These remarks, even if ageist, are insufficient to overcome the compelling evidence proffered by Autogermana showing that Meléndez was dismissed due to poor work performance and they thus fail to raise the inference that the real reason for Meléndez's termination was age discrimination.").

Therefore, the Court **GRANTS** summary judgment for the defendants because Natal has not met his burden for a *prima facie* case of ADEA discrimination given the absence of evidence that Oriental did not treat age neutrally.

B. Hostile Work Environment

Natal alleges that Oriental created a hostile work environment by (1) making disparaging remarks about his age, (2) increasing his duties and schedules, (3) falsely admonishing him, (4) ignoring his requests for backup personnel and thus requiring him to work as a cashier, and (5) sending him a COBRA letter regarding his rights if he were discharged. See Docket No. 49 at 8.

Oriental moves for summary judgment because the alleged harassment was not severe and pervasive enough to establish a hostile work environment; the Court agrees.

Hostile work environment claims originated in sex discrimination litigation, but have since been recognized for members of any protected class. Rivera-Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001) (discussing origin of hostile work environment claims under ADEA). The First Circuit, in recognizing hostile work environment claims under the ADEA, has held that a plaintiff must show that: (1) he/she is a member of a protected class; (2) he/she was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of a plaintiff's employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that the plaintiff did in fact perceive it to be so; and (6) some basis for employer liability has been established. See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

The Supreme Court has noted that the test for proving a hostile work environment is not, and by its nature cannot be, mathematically precise. See Harris v. Forklift Systems Inc., 510 U.S. 17, 22 (1993). A court determining whether an environment is sufficiently hostile or abusive must examine the totality of the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id. at 23. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment. Farragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). The Court's function is one of screening to determine whether, on particular facts, a reasonable jury could reach such a conclusion. See Noviello v. City of Boston, 398 F.3d 76, 94 (1st Cir. 2005).

The record does not evidence a genuine issue of material fact on the hostile work environment issue. These are all the facts properly submitted on this matter: Natal worked extra hours on some Saturdays, and admits it was not due to his age. (Docket Nos. 49 ¶ 48; 61-1 ¶ 48). He did not request additional personnel in Old San Juan because he did not need assistance. (Docket Nos. 49 ¶ 49; 61-1 ¶ 49). He never worked as a cashier in Old San Juan. (Docket Nos. 49 ¶ 54; 61-1 ¶ 50). He received a COBRA letter on March 12, 2016, and was told by Carla Molina, the Human Resources Supervisor, that it was an informative communication. (Docket Nos. 49 ¶¶ 52-53; 61-1 ¶¶ 52-53). Moreover, he received a warning for failing to monitor the cash funds in Cataño and San Juan, and he has clarified that the amount in San Juan was $55. (Docket Nos. 49 ¶ 56; 61-1 ¶ 56). He has also admitted that he does not know if Oriental took disciplinary action against other managers for the same breach, but Natal subjectively feels that the warning was the result of persecution due to age. (Docket Nos. 49 ¶¶ 57-58; 61-1 ¶¶ 57-58). Despite this pattern of alleged harassment, Natal did not report the allegedly discriminatory remarks made by Santiago to Human Resources or her supervisor. (Docket Nos. 49 ¶ 59; 61-1 ¶ 59). He knows that Oriental has an antidiscrimination policy in place, but he has clarified that he did not report his grievance because the Human Resources Manager was present when the alleged discriminatory remarks were made. (Docket No. 61-1 ¶ 28). The only fact Natal has disputed is an e-mail from early 2015 where he appears friendly to his supervisors and that according to Oriental disproves his hostile work environment claim. (Docket Nos. 49 ¶ 61; 61-1 ¶ 61). Beyond these facts, which incorporate Natal's qualifications, Natal did not submit any additional relevant facts in a separate section for Oriental to admit, deny, or qualify.

Taking all these facts as true, even the alleged comments at the suspension meeting, the Court cannot conclude that Natal suffered from a hostile work environment. None of it arises to

the degree of severity and pervasiveness required to establish a hostile work environment claim in the eyes of a reasonable juror—not even the alleged ageist remarks at the suspension meeting or when he requested reasonable accommodation. Precedent supports this decision. See e.g., Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 53 (1st Cir. 2006) (No hostile work environment where plaintiff was called "gray haired" and "cocktaoo," and told he looked like another co-worker who was considered slow and incompetent); Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84 (D.P.R. 2007) (No hostile work environment where plaintiff was called old, elderly, grandmother, and told she should retire); Marrero v. Schindler Elevator Corp., 494 F. Supp. 2d 102, 110 (D.P.R. 2007) (Even if true that plaintiff was referred to as old, little old man, and "viejo pendejo" on a daily basis, it was "too mild to form the basis of a hostile work environment claim."). Calling Natal an "old man," if true, may have been disrespectful. But looking at the totality of circumstances in this case, it was not sufficiently egregious, severe or pervasive to survive summary judgment. Therefore, Oriental's motion for summary judgment on the hostile work environment claim is **GRANTED.**

C. Willful ADEA Discrimination

Natal sues for willful violation of the ADEA. (Docket No. 1 ¶ 26). Section 7(b) of the ADEA provides for liquidated damages for a willful violation. A "violation is considered willful if 'the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 721 (1st Cir. 1994) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985)). Natal has offered no facts proving this issue and did not argue it in his opposition. As noted earlier: "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work,

create the ossature for the argument, and put flesh on its bones." <u>Zannino</u>, 895 F.2d at 17. Therefore, on this issue, the Court will **GRANT** Oriental's motion for summary judgment.

### D. <u>ADEA and ADA Retaliation</u>

Natal alleges that Oriental retaliated against him for (1) refusing to fire Ortiz, who he believes had cancer, (2) requesting a reasonable accommodation under the ADA, and (3) filing an anti-discrimination claim under the ADEA. The standard for retaliation under the ADEA and ADA is the same as Title VII, so the Court will consider both concurrently. <u>See</u> <u>Nassar</u>, 133 S. Ct. at 2532-33 (requiring "but-for" causation under the similarly-worded anti-retaliation provision of Title VII).

To make out a *prima facie* case of retaliation under either type, the Court employs the familiar burden-shifting framework articulated in <u>McDonnell Douglas</u>, 411 U.S. at 801-03. Plaintiff must prove that: (1) []he engaged in protected activity under the ADEA; (2) []he suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected activity." <u>Collazo v. Bristol-Myers Squibb Mfg., Inc.</u>, 617 F.3d 39, 46 (1st Cir. 2010). Once the *prima facie* case of retaliation is shown, a presumption of discrimination arises and the burden of production then shifts to the employer to show a "legitimate, non-discriminatory reason" for the adverse employment action. <u>Id.</u> at 46. If the defendant meets the burden of production, the burden then shifts back to the plaintiff to show that the proffered reason is actually pretextual, and that the plaintiff would not have suffered an adverse action absent retaliatory animus. <u>See</u> <u>Nassar</u>, 133 S. Ct. at 2532-33.

Funneling the facts through the <u>McDonnell Douglas</u> test, the Court finds a genuine issue whether Natal received a negative job evaluation in retaliation for filing an antidiscrimination claim and requesting a reasonable accommodation.

*1. Protected Conduct*

"Protected conduct 'refers to action taken to protest or oppose statutorily prohibited discrimination.'" <u>Planadeball v. Wyndham Vacation Resorts, Inc.</u>, 793 F.3d 169, 175 (1st Cir. 2015) (quoting <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 32 (1st Cir. 2009)). Here, it is undisputed that Natal engaged in protected activity when he filed the anti-discrimination charge on October 9, 2015, and when he requested leave under the FMLA during November. (Docket Nos. 49 ¶ 22, 75; 61-1 ¶ 22, 75). He also alleges he engaged in protected activity when he refused to terminate Ortiz for what he considered to be illegal reasons. Because this second claim fails on the causation prong, the Court will assume that Natal has set forth sufficient facts to prove he opposed unlawful activity and thus engaged in protected activity by refusing to fire Ortiz.

*2. Adverse Action*

Natal alleges a handful of adverse employment actions ensued from his protected activity: a suspension, negative job evaluation, transfer, and the 2016 written warning. Although the Court discussed the "adverse action" requirement at length earlier, in retaliation "[t]his requirement is distinguishable from the 'adverse action' required for a claim of discrimination. It is a lesser standard in order to protect individuals from asserting their rights, even incorrectly, under federal antidiscrimination law." ROTHSTEIN, ET AL § 2:11. In the context of retaliation, an action is materially adverse if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006). "Examples of adverse employment actions in the retaliation context 'include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" <u>Morales-Vallellanes v. Potter</u>, 605

F.3d 27, 36 (1st Cir. 2010) (citing <u>Lapka v. Chertoff</u>, 517 F.3d 974, 986 (7th Cir. 2008)). On the other hand, "'petty slights or minor annoyances that often take place at work and that all employees experience' . . . fall outside the scope of the anti-discrimination laws." <u>Billings v. Town of Grafton</u>, 515 F.3d 39, 54 (1st Cir. 2008) (quoting <u>Burlington Northern</u>, 126 S. Ct. at 2415);

Here, a jury could find that Natal suffered adverse employment actions after engaging in protected activity and opposing unlawful activity. The suspension was an adverse employment action. Although Oriental correctly emphasizes that it occurred before Natal filed the antidiscrimination claim, it happened after Natal alleges to have opposed an unlawful activity— the request to fire Ortiz because she was ill. And while he fails to prove causation, as discussed below, Natal meets his burden of proof for purposes of this prong. Likewise, the negative job evaluation was an adverse employment action. A reasonable juror could find that receiving a negative job evaluation after filing an antidiscrimination charge is a clear example of the type of action that would dissuade a reasonable person from enforcing his rights.

On the other hand, a reasonable juror cannot conclude that the transfer to Old San Juan was an adverse employment action. Natal has not proffered admissible facts showing that he assumed a "less distinguished title," or suffered "a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." <u>Morales-Vallellanes</u>, 605 F.3d at 36 (internal quotation marks omitted). This case is also distinguishable from <u>Billings</u>, where the plaintiff worked as a secretary for the Town administrator and was transferred to the recreation department. 515 F.3d 39. There the First Circuit found an adverse action after because the plaintiff was transferred to "an objectively less prestigious job, reporting to a lower ranked supervisor . . . and requiring less experience and fewer qualifications." <u>Id.</u> at 54.

Here, Natal did not report to a lower ranked supervisor, and his position in Old San Juan had the same requirements and qualifications as the one in Cataño.

Likewise, the 2016 written warning was not an adverse action for retaliation purposes. In Billings, the plaintiff was admonished with "with two typed memoranda criticizing her failure to follow particular instructions." 515 F.3d at 54. The First Circuit held that this "amounts to the kind of 'petty slights or minor annoyances that often take place at work and that all employees experience' and that, consequently, fall outside the scope of the anti-discrimination laws." Id. (quoting Burlington Northern, 126 S. Ct. at 2415). But see Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (memorandum of admonishment was an adverse employment action). Moreover, Natal has admitted his fault in the matter addressed by the memos, defeating any potential argument that said action, even if adverse and causally related to his antidiscrimination charge, was not based on a legitimate business reason and was pretextual.

### 3. Causation

Having established that Natal engaged in protected activity and suffered two adverse employment actions—the suspension and negative job evaluation—Natal must prove that both are causally connected to his protected activity. He tries to prove the necessary causal connection by temporal proximity. "Temporal proximity can create an inference of causation in the proper case." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006). But this temporal proximity "must be very close." Calero-Cerezo, 355 F.3d at 25 (quoting Clark County Sch. Dist. V. Breeden, 532 U.S. 268, 273-74). Three months can be considered "very close." In Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., the First Circuit found temporal proximity when the plaintiff filed an EEOC complaint in February and was disciplined in May. 673 F.3d 1, 15 (1st Cir. 2012). But see Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 84-86 (1st Cir. 2005) (two

months was too remote). On the other hand, this Court has held that "seven months is too long to prove a causal connection." <u>Caez-Fermaint v. State Ins. Fund Corp.</u>, No. 15-3050, 2017 WL 6452411, at *11 (D.P.R. Dec. 18, 2017).

Natal argues that Oriental retaliated against him on September 30 for refusing to terminate Ortiz in March. It is undisputed that Ortiz was transferred to Cataño in March 2015, and Oriental claims that Natal never had to reprimand Ortiz. (Dockets No. 49 ¶ 78; 61-1 ¶ 78). Natal qualifies this by saying that "immediately upon assigning Ortiz," he was instructed to issue warnings for everything she did so that Oriental could discharge her because she was sick. (Docket No. 61-1 ¶ 78). According to Natal, he refused to comply. <u>Id</u>. Six months later he was suspended. This six month gap between Natal's opposition to allegedly unlawful activity and his suspension is too long to prove causation by temporal proximity.

On the other hand, there is close temporal proximity between filing the antidiscrimination charge and taking medical leave and the negative job evaluation. Natal filed the charge in October and took medical leave in November. The negative evaluation occurred on December 31, 2015. "[T]his proximity is close enough to suggest causation, especially given the inferences we must draw in [Natal's] favor." <u>Sanchez-Rodriguez</u>, 673 F.3d at 15 (Plaintiff filed complaint in February and was disciplined in May).

### 4. *Burden-Shifting: Legitimate Business Reasons*

Having established a *prima facie* case of retaliation as to the negative evaluation, the burden shifts to Oriental to articulate a legitimate business reason for it. The undisputed facts show that Oriental gave Natal a negative evaluation because he failed to complete the second part of his training. (Docket Nos. 49 ¶ 30; 61-1 ¶ 30). This is a legitimate business reason for the negative evaluation, so the burden shifts back to Natal to prove that it was pretextual.

*5. Pretext*

Since Oriental provided a legitimate business reason, the burden shifts back to Natal to show a genuine issue of material fact on the matter of pretext. "An employee can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" Carreras, 596 F.3d at 37 (emphasis in original) (citing Santiago-Ramos, 217 F.3d 46, 56 (1st Cir. 2000)). Natal does just that: qualifying Oriental's statement of fact, he clarifies that he failed to complete the training because he was suspended when it happened. (Docket Nos. 49 ¶ 30; 61-1 ¶ 30). He also clarified that he tried to take the training upon his return, but his supervisor did not allow him. Id. This is the type of weakness, inconsistency, and incoherence that establishes pretext. A jury could view these facts and conclude that Oriental wanted Natal to fail the evaluation and took steps to prevent him from doing so, like scheduling it during his suspension and not allowing him to retake it when he returned.

For these reasons, the Court **DENIES** Oriental's motion for summary judgment on the issue of retaliation in the form of Natal's negative job evaluation.

E. <u>American with Disabilities Act: Discrimination and Reasonable Accommodation</u>

Natal requests voluntary dismissal of his disability-based discrimination and reasonable accommodation claims under the American with Disabilities Act and Law 44. Therefore, the Court **GRANTS** Oriental's motion for summary judgment on these issues and **DISMISSES** Natal's ADA and Law 44 claims with prejudice.

F.  Supplemental Jurisdiction

Natal asserts causes of action under local Laws 100, 44, 115, and 45 as well as Articles 1802 and 1803 of the Puerto Rico Civil Code. The only surviving cause of action under local law is that of Law 115, Puerto Rico's antiretaliation statute.

*1.  Law 100*

Law 100 prohibits discrimination on the basis of age, and the First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law No. 100 are coterminous." Dávila v. Corp. De P.R. Para La Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007). Since the Court granted summary judgment on the ADEA cause of action, it **GRANTS** summary judgment for the Law 100 cause of action as well.

*2.  Law 44*

Law 44 is the ADA's local counterpart, for everything but retaliation. Natal asks the Court to dismiss this cause of action (Docket No. 61 at 1), therefore the Court **GRANTS** summary judgment in Oriental's favor.

*3.  Law 115*

Law 115 is Puerto Rico's antiretaliation statute. Because Natal's retaliation claim survives summary judgment, the Court **DENIES** summary judgment for Law 115 claims as well.

*4.  Law 45*

Oriental points out that Natal did not assert any claims under Law 45, despite mentioning it in his complaint. (Docket No. 48 at 22). Oriental did not respond. Thus, the Court **GRANTS** summary judgment on this claim also.

*5. Article 1802 and 1803*

Article 1802 is Puerto Rico's general tort statute, which provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. LAWS ANN. tit. 31 § 5141. In turn, Article 1803 applies the principle of *respondeat superior* to Article 1802 claims. P.R. LAWS ANN. tit. 31 § 5142; Pagán–Cólon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012). "To the extent labor legislation has created new causes of action to address previously uncovered aspects of employment relationships as in the case of discrimination and *retaliation*, it has been subjected to the same remedial exclusivity principle barring redress under general statutes such as Article 1802 of the Civil Code." Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 141 (D.P.R. 2014) (emphasis added). Therefore, since the only surviving cause of action is retaliation, the remedies under Article 1802 and 1803 are barred and the Court **GRANTS** summary judgment in Oriental's favor.

**VI.    Conclusion**

In light of the lengthy discussion above, the Court **GRANTS in part and DENIES in part** Oriental's motion for summary judgment.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of January, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge